OKLAHOMA PUBLISHING CO. *v.* DISTRICT COURT
IN AND FOR OKLAHOMA COUNTY, OKLAHOMA,
ET AL.

No. 76–867.   Decided March 7, 1977

PER CURIAM.

A pretrial order entered by the District Court of Oklahoma County enjoined members of the news media from "publishing, broadcasting, or disseminating, in any manner, the name or picture of [a] minor child" in connection with a juvenile proceeding involving that child then pending in that court. On application for prohibition and mandamus challenging the order as a prior restraint on the press violative of the First and Fourteenth Amendments, the Supreme Court of the State of Oklahoma sustained the order.   This Court entered a stay pending the timely filing and disposition of a petition for cer-

tiorari. 429 U. S. 967 (1976). We now grant the petition for certiorari and reverse the decision below.

A railroad switchman was fatally shot on July 26, 1976. On July 29, 1976, an 11-year-old boy, Larry Donnell Brewer, appeared at a detention hearing in Oklahoma County Juvenile Court on charges filed by state juvenile authorities alleging delinquency by second-degree murder in the shooting of this switchman. Reporters, including one from petitioner's newspapers, were present in the courtroom during the hearing and learned the juvenile's name. As the boy was escorted from the courthouse to a vehicle, one of petitioner's photographers took his picture. Thereafter, a number of stories using the boy's name and photograph were printed in newspapers within the county, including petitioner's three newspapers in Oklahoma City; radio stations broadcast his name and television stations showed film footage of him and identified him by name.

On August 3, 1976, the juvenile was arraigned at a closed hearing, at which the judge entered the pretrial order involved in this case.[1] Additional news reports identifying the juvenile appeared on August 4 and 5. On August 16, the District Court denied petitioner's motion to quash the order. The Oklahoma Supreme Court then denied petitioner's writ of prohibition and mandamus, relying on Oklahoma statutes providing that juvenile proceedings are to be held in private "unless specifically ordered by the judge to be conducted in public," and that juvenile records are open to public inspection "only by order of the court to persons having a legitimate

---

[1] In addition to enjoining publication of the name and picture of the juvenile, the order also enjoined law enforcement officials, juvenile authorities, and prosecution and defense counsel "from disclosing any information or making any comments concerning" the delinquency proceeding pending against the juvenile. Petitioner does not now challenge the restraints on counsel (which were rescinded in a modification of the order on August 5) or on public officials.

interest therein." Okla. Stat. Ann., Tit. 10, §§ 1111, 1125 (Supp. 1976).

As we noted in entering our stay of the pretrial order, petitioner does not challenge the constitutionality of the Oklahoma statutes relied on by the court below. Petitioner asks us only to hold that the First and Fourteenth Amendments will not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings which were in fact open to the public. We think this result is compelled by our recent decisions in *Nebraska Press Assn.* v. *Stuart,* 427 U. S. 539 (1976), and *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469 (1975).

In *Cox Broadcasting* the Court held that a State could not impose sanctions on the accurate publication of the name of a rape victim "which was publicly revealed in connection with the prosecution of the crime." *Id.,* at 471. There, a reporter learned the identity of the victim from an examination of indictments made available by a clerk for his inspection in the courtroom during a recess of court proceedings against the alleged rapists. The Court expressly refrained from intimating a view on any constitutional questions arising from a state policy of denying the public or the press access to official records of juvenile proceedings, *id.,* at 496 n. 26, but made clear that the press may not be prohibited from "truthfully publishing information released to the public in official court records." *Id.,* at 496.

This principle was reaffirmed last Term in *Nebraska Press Assn.* v. *Stuart, supra,* which held unconstitutional an order prohibiting the press from publishing certain information tending to show the guilt of a defendant in an impending criminal trial. In Part VI–D of its opinion, the Court focused on the information covered by the order that had been adduced as evidence in a preliminary hearing open to the public and the press; we concluded that, to the extent the order prohibited the publication of such evidence, "it plainly violated settled principles," 427 U. S., at 568, citing *Cox Broad-*

*casting Corp.* v. *Cohn, supra; Sheppard* v. *Maxwell,* 384 U. S. 333, 362–363 (1966) ("[T]here is nothing that proscribes the press from reporting events that transpire in the courtroom"); and *Craig* v. *Harney,* 331 U. S. 367, 374 (1947) ("Those who see and hear what transpired [in the courtroom] can report it with impunity"). The Court noted that under state law the trial court was permitted in certain circumstances to close pretrial proceedings to the public, but indicated that such an option did not allow the trial judge to suppress publication of information from the hearing if the public was allowed to attend: "[O]nce a public hearing had been held, what transpired there could not be subject to prior restraint." 427 U. S., at 568.

The court below found the rationale of these decisions to be inapplicable here because a state statute provided for closed juvenile hearings unless specifically opened to the public by court order and because "there is no indication that the judge distinctly and expressly ordered the hearing to be public." We think *Cox* and *Nebraska Press* are controlling nonetheless. Whether or not the trial judge expressly made such an order, members of the press were in fact present at the hearing with the full knowledge of the presiding judge, the prosecutor, and the defense counsel. No objection was made to the presence of the press in the courtroom or to the photographing of the juvenile as he left the courthouse. There is no evidence that petitioner acquired the information unlawfully or even without the State's implicit approval. The name and picture of the juvenile here were "publicly revealed in connection with the prosecution of the crime," 420 U. S., at 471, much as the name of the rape victim in *Cox Broadcasting* was placed in the public domain.[2] Under these circumstances, the District

---

[2] In *Cox Broadcasting* the Court quoted the following description by the reporter of the manner in which the name of the rape victim was revealed to him:

" '[D]uring a recess of the said trial, I approached the clerk of the court, who was sitting directly in front of the bench, and requested to see a copy

Court's order abridges the freedom of the press in violation of the First and Fourteenth Amendments.

The petition for certiorari is granted, and the judgment is

*Reversed.*

---

of the indictments. In open court, I was handed the indictments, both the murder and the rape indictments, and was allowed to examine fully this document. . . . Moreover, no attempt was made by the clerk or anyone else to withhold the name and identity of the victim from me or from anyone else and the said indictments apparently were available for public inspection upon request.' " 420 U. S., at 473 n. 3.