REQUESTED BY: Senator Vard Johnson 2108 State Capitol Bldg. Lincoln, NE 68509
Dear Senator Johnson:
You wish to know whether a proposed amendment to the Nebraska Fair Employment Practice Act (FEPA), which would close the record of a Nebraska Equal Opportunity Commission public hearing, would conflict with statutory open meeting provisions or with any constitutional right to know or obtain information.
The proposed subsection, which would amend Neb.Rev.Stat. § 48-1119 (Reissue 1978), states:
 (5) The parties to any settlement agreement reached during the public hearing process but before the issuing of a final order by the Commission may stipulate to the confidentiality of such settlement agreement and the record.
LB 739.
We are of the opinion that the proposed subsection is not governed by the Nebraska public meetings statute, Neb.Rev.Stat. §§ 84-1408 to 84-1414 (Reissue 1981, 1983 Supp.), which applies to rulemaking functions of public bodies. (See Attorney General Opinion #105, July 14, 1975). The NEOC public hearings, which are conducted before a hearing examiner, in contrast, are judicial in nature.
Neb.Rev.Stat. § 48-1119(1) states:
 In case of failure to eliminate any unlawful employment practice by informal methods of conference, conciliation, and persuasion, the commission may order a public hearing. If such hearing is ordered, the commission shall cause to be issued and served a written notice, together with a copy of a complaint, requiring the person, employer, labor organization or employment agency named in the complaint, hereinafter referred to as respondent, to answer such charges at a hearing before the commission at a time and place which shall be specified in such notice. Such hearing shall be within the county where the alleged unfair practice occurred. The complainant shall be a party to the proceeding, and in the discretion of the commission any other person whose testimony has a bearing on the matter may be allowed to intervene therein. Both the complainant and the respondent, in addition to the commission, may introduce witnesses at the hearing. The respondent may file a verified answer to the allegations of the complaint and may appear at such hearing in person and with or without counsel. Testimony or other evidence may be introduced by either party. All evidence shall be under oath and a record thereof shall be made and preserved. Such proceedings shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the State of Nebraska, and shall be of public record.
As an initial matter, the language of the proposed subsection is not clear. It could be interpreted to mean either that the parties may bind themselves but no one else to maintain the confidentiality of the settlement agreement and record or that the stipulation of confidentiality would extend to to exclude all persons who desired access to the information in question.
Presuming that the latter interpretation is meant, it is our opinion that the proposed amendment is constitutionally suspect. We would have no quarrel with a proposal that the parties be able to stipulate among themselves that they will not release the terms of settlement or the record to other persons. We do believe, however, that the parties cannot constitutionally stipulate to close the record of the public hearing from public scrutiny.
From the language of the FEPA, the public hearing can be considered analogous to a trial in district court, in terms of the role of the parties, introduction of evidence and the like. Most importantly, the hearing, just as a trial, is public. This obviously means that members of the public, as well as the parties, their counsel and the hearing examiner, may be present. The `public' would include members of the media who may publish what occurred at the hearing.
The proposed amendment would essentially put a stop to public dissemination of such information even if the public hearing was already completed, merely by the parties reaching a settlement prior to the NEOC's issuance of a final order. The parties could conceivably cut off public access by accepting the terms of the hearing examiner's recommended order and decision and then calling for confidentiality of everything that occurred beforehand.
The First Amendment of the United States Constitution states that `Congress shall make no law . . . abridging the freedom of speech, or of the press; . . .' The due process clause of the Fourteenth Amendment extends this liberty from `invasion by state action.' Nebraska Press Association v.Stuart, 427 U.S. 539, 556 (1976). In that cases, the Court stated:
 Much of the information that the Nebraska courts enjoined petitioners from publishing was already in the public domain, having been revealed in open court proceedings or through public documents. Our prior cases have foreclosed any serious contention that further disclosure of such information can be suppressed before publication or even punished after publication. `A trial is a public event. What transpires in the court room is public property. . . . Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.' Craig v. Harney, 331 U.S. 367 at 374. Similarly, Estes v. Texas 331 U.S. 532
at 541-542, a case involving the Sixth Amendment right to a fair trial, observed: `Reporters of all media . . . are plainly free to report whatever occurs in open court through their respective media. This was settled in Bridges v. California, 314 U.S. 252 (1941), and Pennekamp v. Florida, 328 U.S. 331 (1946), which we reaffirm.' 427 U.S. at 595-596. (Brennan, concurring opinion).
In addition, the Supreme Court, in Oklahoma PublishingCo. v. District Court, 430 U.S. 308 (1977), a criminal case involving a juvenile, ruled that `the First andFourteenth Amendments will not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings which were in fact open to the public.'430 U.S. at 310. Citing Nebraska Press Association v.Stuart, supra, the Court stated:
 The Court noted that under state law the trial court was permitted in certain circumstances to close pretrial proceedings to the public, but indicated that such an option did not allow the trial judge to suppress publication of information from the hearing if the public was allowed to attend: `Once a public hearing had been held, what transpired there could not be subject to prior restraint.' 427 U.S. at 568.
430 U.S. at 311. See also Cox Broadcasting Corp. v. Cohn,420 U.S. 469 (1975).
Your proposed amendment could act to suppress the disclosure of information obtained at a public hearing by persons who had a right to be there, simply by the agreement of the parties. In contrast to Stuart, which involved the balancing between the First Amendment and the Sixth Amendment guarantee of trial by an impartial jury in a criminal prosecution, the interest in avoiding potentially damaging publicity at a public hearing involving allegations of employment discrimination is not as compelling. By the time the dispute has reached the public hearing stage, the parties have had ample opportunity to reach a settlement through confidential procedures established under the FEPA. See Neb.Rev.Stat. § 48-1118(1) (1982 Cum.Supp.).
Sincerely,
PAUL L. DOUGLAS Attorney General
Dale D. Brodkey Assistant Attorney General