(October 9, 1985)

■ In the Matter of DANIEL HAYS, Petitioner, v LUIGI R. MARANO, Respondent.—Proceeding pursuant to CPLR article 78 (1) to "vacate" a directive of the Supreme Court, Kings County (Marano, J.), issued on October 3, 1985, prohibiting petitioner from publishing information relating to Grand Jury proceedings in connection with the case entitled *People v Pepitone* (indictment No. 1719/85) presently pending in the Supreme

Court, Kings County, and (2) to prohibit said court from initiating contempt proceedings against petitioner for violation of its directive.

Petition granted, on the law, without costs or disbursements, and the respondent is prohibited from enforcing his directive of October 3, 1985, including the initiation of contempt proceedings against petitioner for violation of his directive.

Petitioner is a reporter for the *New York Daily News*. As part of his assignment to cover the Brooklyn courts, petitioner has been investigating and reporting on criminal proceedings against former New York Yankee baseball player Joseph Pepitone for alleged narcotics violations. On or about August 30, 1985, petitioner was granted access to the public court file in that proceeding. Upon examining that file, he discovered that it contained the Grand Jury testimony of Pepitone's codefendant, Robert Oates. Despite requests by Pepitone's defense counsel and by Judge Marano not to disclose the material, petitioner wrote an article which was published in the *New York Daily News* on September 4, 1985, which contained information taken from Oates' testimony.

On September 24, 1985, Pepitone's attorney moved to dismiss his client's indictment, claiming that the article had created prejudicial publicity, and also requested that the courtroom be closed to the media during argument of the motion. A decision was reserved on the closure application pending further argument, and the entire court file in the Pepitone case was ordered to be sealed. In a memorandum decision dated October 3, 1985, Judge Marano denied defense counsel's request for closure of the courtroom, but directed that the attorneys' arguments on the motion to dismiss the indictment be centered "only around the issue as to whether the defendant can get a fair trial". At the hearing on the motion held that same day, Pepitone's defense counsel applied to the court for an order preventing petitioner from publishing any further articles based upon his reading of the Grand Jury minutes.

Judge Marano determined that although petitioner had discovered Grand Jury minutes inadvertently placed in a public document, that material was, nevertheless, secret. He granted the application to avoid "exacerbating the situation" through further publication. Petitioner was not, however, barred from reporting upon the results of the day's hearing, nor were other members of the media placed under the

nondisclosure order. Subsequent to the October 3 directive, several newspapers, including the *New York Daily News,* published articles about the "gag order" which repeated the contents of petitioner's original September 4 story.

On October 4, 1985, a Justice of this court ordered that the directive of October 3, 1985 be stayed pending the hearing of this article 78 proceeding. We conclude that the respondent should be prohibited from enforcing the directive in question.

It has frequently been stated that where a newspaper lawfully obtains truthful information about a matter of public significance, the State may not prevent its publication absent a need to further a State interest of the highest order *(Smith v Daily Mail Pub. Co.,* 443 US 97; *Oklahoma Pub. Co. v District Ct.,* 430 US 308; *Cox Broadcasting Corp. v Cohn,* 420 US 469). Since the Grand Jury testimony of Robert Oates was contained in a public court file at the time of its discovery by petitioner, it cannot be said that the information contained therein was improperly obtained by petitioner *(see, Cox Broadcasting Corp. v Cohn, supra).* Under the facts of this case, petitioner also did not disclose this information unlawfully. We note that CPL 190.25 (4) and its companion statute Penal Law § 215.70 contain an inclusive list of parties to the Grand Jury process who may be prosecuted for disclosure of the nature and substance of Grand Jury material without court approval. Members of the media are not included among those persons.

It has been argued that further publication of the Grand Jury material by petitioner may interfere with Pepitone's ability to receive a fair trial. However, there is no evidence petitioner possesses any information beyond that which was published in his September 4 article. But even if petitioner possesses additional information, he should not be restrained from publishing what he has learned since it has not been demonstrated that other measures, such as a thorough voir dire, would not insure Pepitone a fair trial *(see, Nebraska Press Assn. v Stuart,* 427 US 539). In addition, since the "gag" order was directed at petitioner alone, it would not have been an effective means to insure a fair trial because other members of the media were free to report on the proceedings based upon petitioner's research *(see, Nebraska Press Assn. v Stuart, supra).*

Although the respondent acted cautiously to preserve the secrecy of the Grand Jury testimony, there was no basis for the directive since petitioner's information was not obtained improperly and since there is no evidence that the directive

was necessary for, or in fact, capable of, insuring Joseph Pepitone a fair trial. Mangano, J. P., Gibbons, Thompson and Kunzeman, JJ., concur.