[No. D007616. Fourth Dist., Div. One. May 13, 1988.]

KCST-TV CHANNEL 39, Petitioner, v.
THE MUNICIPAL COURT FOR THE SAN DIEGO JUDICIAL
DISTRICT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

## COUNSEL

Gray, Cary, Ames & Frye and Marilyn L. Huff for Petitioner.

No appearance for Respondent.

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman, Richard J. Lewis, Paul M. Morley, Deputy District Attorneys, Charles H. Adair and Stephen J. Perrello for Real Parties in Interest.

Lewis A. Wenzell as Amicus Curiae on behalf of Real Parties in Interest.

## OPINION

**WORK, J.—** ▮ KCST-TV Channel 39's[1] petition for mandate asks us to vacate a municipal court order temporarily prohibiting it from publicly

---

[1] In addition to separate responses from real parties, the District Attorney of San Diego County and Quarles, we have received and considered amicus briefs on behalf of KGTV-

exhibiting an artist's rendering of the facial features of Alvin Quarles, made during Quarles's arraignment on multiple charges arising from a series of highly publicized sexual assaults. We conclude the drawing was lawfully obtained during a public criminal proceeding and long-standing Supreme Court precedent establishes the court's prohibitory order is an unconstitutional prior restraint violating the First Amendment. We grant the petition and issue a peremptory writ.

When Quarles was arraigned, the court granted Channel 39's request for permission to film and electronically record the proceedings subject to a limitation that no frontal photographs of Quarles be taken. (Cal. Rules of Court, rule 980(b).) The limitation on photography was imposed after both the People and Quarles expressed concerns that other victims in numerous cases still being investigated might view newscasts containing photographs of Quarles before making identification at a live lineup, thus permitting impeaching attacks on the validity of later in-court identification.[2] There was no order purporting to restrain Channel 39 from exhibiting any material it did photograph, nor was there any reference to obtaining a nonphotographic likeness of the defendant.

The People argue the court's initial order was pursuant to California Rules of Court, rule 980(b) which gives the court sole discretion to "limit or terminate film or electronic media coverage in the interests of justice to protect the rights of the parties and the dignity of the court, or to assure the orderly conduct of the proceedings." However, that rule provides no support for an order prohibiting either taking or publishing an artistic drawing of the accused. California Rules of Court, rule 980(b) specifically states, "This rule does not otherwise limit or restrict the right of the media to cover and report court proceedings." To the extent proponents of the court's order rely on Channel 39's violation of the "spirit" of the no frontal photography prohibition at arraignment, suffice it to say that "spirit" does not emanate from rule 980. Thus, neither the express terms nor the "spirit" of the initial order purported to restrain Channel 39 from exhibiting its drawing.

In any event, the court issued a specific order two days later prohibiting Channel 39 from publishing the drawing, justified as a weighting in favor of prior restraint upon "balancing the First Amendment rights versus the prejudice that may exist to the People or to the defense in presenting this

Channel 10 and KFMB-TV Channel 8, the Society of Professional Journalists Sigma Delta Chi, the Copley Press, Inc. and jointly from the Criminal Defense Lawyers Club and the Criminal Defense Bar Association.

[2] The validity of these concerns is not disputed. (See discussion in Taylor, Eyewitness Identification (1982) pp. 167-168.)

case." Although it identified the perceived danger of pretrial publicity to be the "very direct issue of identification by potential victims of this defendant," the court did not evaluate the likelihood of victims viewing the drawing if portrayed on TV, the degree of prejudice that any such observations might create, or the efficacy of available alternatives, to avoid or diminish the potential for prejudice.[3]

■ Prior restraints on media publications, if permissible at all, are permissible only in the most extraordinary of circumstances. (*C.B.S.* v. *U.S. Dist. Ct. for C.D. of California* (1983) 729 F.2d 1174, 1183, citing *New York Times Co.* v. *United States* (1971) 403 U.S. 713, 741 [29 L.Ed.2d 822, 840, 91 S.Ct. 2140], where the government's attempt to restrain publication of material it claimed posed a "grave and immediate danger to the security of the United States" was rejected.)

It is irrelevant that a restraint is specifically limited in time, for it is a total bar to public access to the material while it is enforced. (*United States* v. *Brooklier* (9th Cir. 1982) 685 F.2d 1162, 1169-1171.) Nor is the temporal nature of the restraint a bar to appellate review, because to uphold a plea of mootness would insulate temporary restraints, which have the potential to reoccur, from appellate regulation. (*Nebraska Press Assn.* v. *Stuart* (1976) 427 U.S. 539, 546-547 [49 L.Ed.2d 683, 690, 96 S.Ct. 2791].)

■ Real parties and their amici argue this case differs from landmark Supreme Court precedent upholding a media right to be free from judicial restraints on publication, specifically noting cases such as *New York Times Co.* v. *United States, supra,* 403 U.S. 713, did not involve offsetting constitutional rights. There, and in similar decisions, the only fundamental guarantee was that claimed by the media under the First Amendment. In contrast, real parties stress here Quarles's Sixth Amendment right to a fair trial is jeopardized by permitting Channel 39 to exercise unlimited First Amendment freedom of expression. Thus, they argue the Supreme Court's expressions regarding the heavy burden on those seeking to restrain publication and requiring a showing of clear and present danger should not apply.

However, in *Nebraska Press Assn.* v. *Stuart, supra,* 427 U.S. 539, the Supreme Court directly addressed a prior restraint prohibiting publication

---

[3] For instance, courts and jurors are routinely required to evaluate whether an eyewitness identification is accurate in light of prior exposure to photographs or curbside, one-on-one custodial viewings. It is rare that a reported decision finds significant prejudicial taint. (For an example of clear error found to be harmless, see *People* v. *Ottombrino* (1982) 127 Cal.App.3d 574 [179 Cal.Rptr. 676].) Further, the victims of the uncharged crimes were known to the prosecutor who was in contact with them. He did not explain why a simple admonition to them would not adequately eliminate these concerns.

of contents of a mass murderer's confession which had been introduced openly at arraignment as well as other information strongly implicating the defendant. The lower court order was issued to insure defendant a fair trial and the court directly addressed the competing constitutional guaranties. Noting that even sensationally publicized ·trials seldom result in an unfair result, and those rare instances where reversible taint is established are often due to the trial court's failure to adopt available procedures other than imposing media censorship, the Supreme Court reiterated the common concern expressed in its earlier decisions that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." (*Id.* at p. 559 [49 L.Ed.2d at p. 697].) Accordingly, the court refused to assign priorities to the Sixth vis-à-vis the First Amendment guaranties and stated no prior restraints could be justified on less than a showing of immediate irremediable and otherwise unavoidable denial of a fair trial. The court found no such showing had been made.

Further, in face of the same arguments, a *per curiam* decision in *Oklahoma Publishing Co.* v. *District Court* (1977) 430 U.S. 308 [51 L.Ed.2d 355, 97 S.Ct. 1045] struck down a pretrial order prohibiting media publication of a juvenile's name and photograph it had lawfully obtained as violative of the First and Fourteenth Amendments. The court stated these constitutional guaranties to free expression as defined in the court's earlier holdings in *Nebraska Press Assn* v. *Stuart, supra,* 427 U.S. 539, and *Cox Broadcasting Corp.* v. *Cohn* (1975) 420 U.S. 469 [43 L.Ed.2d 328, 95 S.Ct. 1029], compelled it to declare a state court may not prohibit publication of widely disseminated information obtained at court proceedings open to the public. (*Oklahoma Publishing Co.* v. *District Court, supra,* 430 U.S. at p. 310 [51 L.Ed.2d at p. 357].) There, the court directly ordered the news media persons present to refrain from "publishing, broadcasting, or disseminating, in any manner, the name or picture of" the charged minor in connection with pending juvenile charges. (*Id.* at p. 308 [*ibid.*].) As the minor departed the courtroom after this order was given, his photograph was taken and included in television film footage, and various newspapers embellished their reports with his name and picture.

In *Oklahoma Publishing Co.* the court's initial order prohibited publication of the name and photograph. Publication was in direct and knowing violation of the order. Here, there was no order contravened by the artistic depiction in open court and the court did not, at that time, make any order restraining the media from publishing any information or materials it obtained lawfully, including the artist drawing. Had Channel 39 publicly exhibited the sketch without voluntarily giving prior notification to the district attorney of its intent to do so to permit the People to request a restraining order, no violation of any court order would have occurred. On

this factual record, once the drawing was lawfully obtained, its dissemination in normal media publication could not be constitutionally restrained.

Let a peremptory writ issue.

Kremer, P. J., and Todd, J., concurred.