Quinlan, J.
This is an action in which the plaintiffs, Jean L. Clement and Franklin Etienne, are alleging inter alia invasion of privacy in violation G.L.c. 214, §3B. Both plaintiffs are employed by the defendant Sheraton Boston Corporation (“Sheraton”). The action arose as a result of secret videotaping by Sheraton of a remote area in the employees locker room.
Sheraton is seeking injunctive relief in the nature of a protective order prohibiting “the plaintiffs herein, their representatives and agents . . . FROM MAKING any statement which a reasonable person would expect to be disseminated by means of public communications” relating to 1) evidence regarding the incidents which are the subject of this action, 2) the character or credibility of a party, witness or prospective witness, and 3) their opinion as to the merit (or lack thereof) of any claims or defenses asserted in this litigation. Although not named therein, the proposed order is particularly directed at plaintiffs’ attorneys of record, Lee D. Goldstein, Esq. and Jeffrey Feuer, Esq.[1] Sheraton is also seeking an order imposing sanctions for multiple alleged violations of D.R. 7-107(G) which would include 1) an order directing Goldstein to pay Sheraton $2,500.00 towards the costs and attorneys fees incurred by Sheraton in connection with this motion and 2) in the event of any future violation of D.R. 7-107(G) by Attorneys Goldstein and Feuer “or any other firm or lawyer with whom they are associated,” that they be immediately disqualified from acting further as counsel. The plaintiffs and their attorneys oppose Sheraton’s Motion primarily on First Amendment and art. 16 grounds. The Massachusetts Civil Liberties Union filed an amicus memorandum in opposition to Sheraton’s motion.
In support of its motion, Sheraton has submitted the affidavit of its counsel of record, Allen C. B. Horsley, and attached thereto copies of news articles which include statements attributed to the plaintiffs’ attorneys. The statements were reported by the press and media. Most were attributed to Dominic Bozzotto, president of Local 26. Others were attributed to Attorneys Goldstein and Feuer. On February 11, 1993, The Boston Herald reported Goldstein as stating, “When I looked at the tape, I was outraged” and “How would you like to be photographed in the bathroom at your workplace? Big Brother is looking no matter where you were.” On NECN-TV, New England Cable News, on February 11, 1993, Goldstein stated, “Imagine if in your work place somebody put in the bathroom where you go a camera and you don’t know it’s there. That’s wrong and it’s also illegal.” On that same date on WHDH-TV, Channel 7 news, Goldstein stated, “I just think it’s inexcusable. I mean, how would you like your workplace to have a camera in the bathroom recording you when you’re alone? I think it’s an outrageous act by Sheraton.” On February 14, 1993, Goldstein was again on the Channel 7 news stating, “They [Sheraton] can’t deny that they made the tape; we have the tape. They can’t deny that they put the wires in the lockers.” Goldstein appeared on WCVB-TV, Channel 5, on February 14, 1993 stating, “We’re not sure who did it for them or why they did it, and that’s one of the things we want to find out. Again, at this point, it’s not whether it’s a violation, but how extensive it is.” On February 12, 1993, the locker room taping and the lawsuit which was its progeny were the subject of a news story appearing in the Boston Globe wherein Goldstein is reported to have said, “The videotapes show people changing their clothes, taking their breaks, whatever people normally do in locker rooms” and “We think the same thing has gone on in the ladies changing room, and we are curious about whether this has been done to hotel guests.” Goldstein is also reported to have said that he and the union waited several months before filing this action “because they wanted to make sure the information they had received was correct. He said the union was investigating the workers’ findings.”
More recently and, according to Sheraton, egregiously, statements were reported in two periodicals, Hotel Business and USAE.[2] On October 6, 1993, the Hotel Business News reported the filing of this action and information said to have been obtained from the deposition testimony of Sheraton’s security chief, Michael Flood to the effect that videocameras were also installed briefly in the hotel’s restaurant, coffee shop and lounge to ascertain whether employees were stealing money or giving free drinks. Goldstein is reported to have said that Flood resigned shortly before a television show concerning the taping aired and concerning the fact that he had petitioned the court to broaden the definition of employees covered by the lawsuit. Goldstein is also reported to have said that “(a]lthough most of the tapes made by the hotel were said to be destroyed, ... he received nine others from Sheraton which he compares to the Watergate tapes, because they contain ‘significant gaps.’ ”
*580 On October 12, 1993, USAE reported Goldstein as saying, “It’s inexplicable why Sheraton would do this” and ‘The company needs to show some respect for the privacy of its employees.” He is also reported to have said that a videotape was discovered by a female employee “who found it on top of an oven in one of the hotel lounges” and took it home to watch. The article also included information, the source of which was attributed to deposition testimony in this action. Attorney Goldstein is also reported to have said ‘They [the plaintiffs] both escaped from Haiti and this is reminding them of the same level of oppression, that Big Brother feeling . . . They’re walking around now always thinking someone’s following them.” In commenting on the case and discovery, Goldstein is reported to have said, “Sheraton’s story kept changing” and “[a]s the case went on, we found out employees were being taped in three other locations.” Goldstein is also reported to have said that “Sheraton Boston may not be the only hotel using video surveillance. In a recent deposition, a Sheraton official admitted that electronic surveillance was used at Sheraton properties in Los Angeles and San Francisco . . .” There are also comments attributed to Goldstein concerning a separate action brought by Sheraton against Bozzotto and Local 26. Goldstein is reported to have said that “the day Sheraton filed the lawsuit, the wires were still in the locker” and “[u]sing video cameras was one of the least effective ways for Sheraton to go about a drug investigation . . . [t]he hotel could have used undercover agents or unannounced locker searches. The latter two mechanisms are outlined and accepted in the Local 26 union contract.”
Feuer’s public pronouncements were significantly less frequent. In an article in The Boston Herald dated May 28, 1993, he is reported to have said that he believed that wiretapping did occur and that employees’ civil rights were violated, stating “It is clear from talking to union members that they have been intimidated by the use of these videotapes, that people are looking over their shoulders at work and wondering where they are going to be videotaped next." He is also reported to have said in reference to a Sheraton motion to prevent further distribution of the tapes, “It’s ridiculous . . . The rights of workers not to be spied upon in their workplace is a major issue throughout the country and the news media is right to be interested in it.” The article concluded with a statement attributed to Feuer: “Just as Sheraton did secret videotaping, they now want to keep the issue itself secret as well.”
Discussion
“ ‘[W]hen asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party’s claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to irreparable harm, the judge must then balance the risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party . . . Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.’ . . . Packaging Indus. Group, Inc. v. Cheney, [380 Mass. 609] 617 [(1980)]. ‘In an appropriate case, the risk of harm to the public interest also may be considered.’ Brookline v. Goldstein, 388 Mass. 443,447 (1983).” GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993).
At the outset, Sheraton is seeking to restrain speech both by a direct order prohibiting the plaintiffs and their attorneys from making public statements about the case and by proposed sanctions in the event of their noncompliance. Such an order is properly characterized as a “prior restraint” for the purposes of the First and Fourteenth Amendments to the United States Constitution and art. 16 of the Declaration of Rights to the Constitution of the Commonwealth. See Application of Dow Jones & Co., Inc., 842 F.2d 603, 608 (2d Cir. 1988); Levine v. United States Dist. Court for the Cent. Dist., 764 F.2d 590, 595 (9th Cir. 1985); see also Krebiozen Research Foundation v. Beacon Press, Inc., 334 Mass. 86, cert. denied, 352 U.S. 848 (1956). The order proposed tracks the language of Supreme Judicial Court, Rule 3:07, D.R. 7-107(G)(l) through (4), which prohibits an attorney involved in a civil action from making “an extrajudicial statement other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication and that relates to: (1) evidence regarding the occurrence or transaction involved, (2) the character, credibility, or criminal record of a party, witness, or prospective witness ... (4) his opinion as to the merits of the claims or defenses of a party . . .”[3]
D.R. 7-107(G) notwithstanding, it has been observed that “gag order” cases of Nebraska Press Ass’n v. Stuart, 427 U.S. 539 (1976), and Oklahoma Publishing Co. v. District Court, 430 U.S. 308 (1977), “are illustrative of the proposition that only in the most extreme situations, if at all, may a State court constitutionally forbid a newspaper (or anyone else) to report or comment on happenings in and about proceedings which have been held in open court; and a similar rule would apply to court files otherwise unrestricted. Such censorship is certainly in the category of prior restraint.” Ottaway Newspapers, Inc. v. Appeals Court, 372 Mass. 539, 547-48 (1977).
Given the First Amendment and art. 16 implications of the injunctive relief sought, Sheraton bears a heavy burden of establishing an injury which would justify prior restraint. It is incumbent for Sheraton to demonstrate that the statements attributed to the attorneys for the plaintiffs created a “substantial likelihood of materially prejudicing an adjudicative proceeding,” i.e. materially prejudicing Sheraton’s ability to obtain a fair trial. See Gentile v. State Bar of Nevada, *581 115 L.Ed.2d 888, 900 (1991). Sheraton has failed to do so. In fact, although Sheraton claims that the attorneys are attempting to inflame public opinion by comments previously made, the statements were made by Goldstein in the early part of 1993 and by Feuer in October of 1993. Trial of the action is not imminent.
Goldstein’s most recent comments precipitated Sheraton’s filing this motion as an emergency matter. To quote Sheraton, “Goldstein’s most recent comments appear in two publications which are aimed directly at Sheraton’s competitors and client base: Hotel Business, a hotel industry trade publication, and USAE, a specialized newsletter aimed precisely at Sheraton’s most important client base, trade associations and the executives who manage them. Accordingly, Goldstein’s statements are not only intended to speak to the evidence and merits of his clients’ single remaining claim, but to simultaneously injure Sheraton's reputation precisely among those with whom that reputation is most important." Sheraton Memorandum, pp. 12-13 [emphasis supplied]. “[A]llegedly false and defamatory statements are protected from prior injunctive restraint by the First Amendment and art. 16.” Nyer v. Munoz-Mendoza, 385 Mass. 184, 188 (1982), citing Krebiozen Research Foundation v. Beacon Press, Inc., 334 Mass. 86, cert. denied, 352 U.S. 848 (1956). The injunctive relief sought is neither appropriate nor warranted.
Since Sheraton has failed to demonstrate a factual predicate which would justify the order sought, it is not necessary to address issues concerning whether the statements made violate D.R. 7-107(G) and/or whether those statements are defamatory. Such determinations, if required, would best be made in other proceedings. Nor is it necessary or appropriate to impose sanctions upon Goldstein.
ORDER
For the foregoing reasons, Sheraton’s Emergency Motion for Injunctive Relief and Sanctions is DENIED.

 The motion was originally directed towards Attorneys Goldstein and Feuer. However, the scope of the proposed order submitted by Sheraton is more generic, referring to the plaintiffs and “their representatives and agents.” [Sheraton’s Proposed Order.] The two plaintiffs are representatives of the Hotel, Restaurant, Institutional Employees and Bartenders Union AFL/CIO Local 26. Both attorneys have appeared as counsel for Local 26. [Sheraton’s Memorandum in Support of its Emergency Motion, p. 1.] Sheraton has a separate action against Local 26 and its president, Dominic Bozzotto, alleging libel and abuse of process. The latter claim is made in connection with Local 26 and Bozzotto’s alleged control of the institution and prosecution of this action.

 USAE is published in Bethesda, Maryland. According to the Horsely affidavit, it is circulated in the New England area.

 Subparagraph (5) extends the prohibition to “[a]ny other matter reasonably likely to interfere with a fair trial of the action.”