******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SHELDON, J., dissenting. I agree with my colleagues that the general rule in this state governing the sealing or limitation of disclosure of files, affidavits, documents or other materials on file with the court or filed in connection with a court proceeding in a criminal case is Practice Book § 42-49A. By its terms, that rule applies to all written requests by the parties for sealing or limiting the disclosure of any such filed materials "[e]xcept as otherwise provided by law."

Practice Book § 42-49A establishes, in subsections (a) and (c) thereof, a presumption in favor of the public's right of access to all such filed materials that can only be overcome if the judicial authority considering the possible issuance of an order sealing or limiting the disclosure of such materials concludes that such an order "is necessary to preserve an interest which is determined to override the public's interest in viewing such materials." Practice Book § 42-49A (c). Consistent with the latter requirement, subsection (c) of the rule further requires the court, before issuing a sealing or limitation of disclosure order, to "consider reasonable alternatives to any such order" and to ensure that "such order shall be no broader than necessary to protect [that] overriding interest." Id.

To enforce the public's presumptive right of access to filed materials as to which sealing or limitation of disclosure is sought, Practice Book § 42-49A further establishes, in subsections (d) and (e) thereof, a detailed set of procedural protections designed to ensure that the public is notified of the pendency of any motion seeking such relief thereunder and given an opportunity to present argument in opposition thereto. Subsection (d) of the rule further requires the court, in the event it grants such a motion, to articulate the overriding interest being protected by its resulting order and to specify the findings underlying that order.

Finally, to enforce the foregoing limitations upon the court's power to seal or limit the disclosure of materials on file with the court or filed in connection with a court proceeding, and thus to vindicate the public's presumptive right of access to such materials, General Statutes § 51-164x (c) provides, in relevant part, that "[a]ny person affected by . . . [any] order that seals or limits the disclosure of" such materials may seek "review of such order by the filing of a petition for review with the Appellate Court within seventy-two hours from the issuance of such court order." The statute further provides that the petition for review shall be filed, heard and decided "in accordance with such rules as the judges of the Appellate Court may adopt [for that purpose], consistent with the rights of the petitioner and the parties to the case." General Statutes

§ 51-164x (d). The rules we have adopted to implement the right of review under § 51-164x are set forth in Practice Book § 77-1, which provides, in language mirroring the statute, that "(a) . . . any person affected by . . . any order that seals or limits the disclosure of files, affidavits, documents or other material on file with the court or filed in connection with a court proceeding, may seek review of such order by filing a petition for review with the appellate court within seventy-two hours after the issuance of the order."

The instant petition for review was timely filed on January 27, 2017, two days after the trial court issued its clarification order of January 25, 2017, which the petitioner now challenges. The trial court issued that order in response to the petitioner's written motion to clarify the court's three prior orders of January 4, 2017, which together established the procedures for and the permissible scope of electronic coverage of the trial in this criminal case, in which the defendant was charged with murder.

In its first prior order, the court overruled the objections of the defendant and the state to the petitioner's request to broadcast, televise and/or record the proceedings in this case. That order expressly established, "[p]ursuant to the requirements of Practice Book § 1-11C," several "guidelines" to which the petitioner was to "adhere . . . throughout the trial of this case." Such guidelines specified, inter alia: which aspects of the proceedings could be recorded; what types of equipment could be used to record such proceedings; where in the courthouse and the courtroom such recording equipment could be used; how, by whom and in what manner such equipment could be operated; and that no juror was to be recorded at any time. In anticipation, moreover, of the possibility that either party might come to "[believe], in the course of the trial, that recording will undermine the legal rights of a party or will significantly compromise the safety of a witness or other person or impact significant privacy concerns," the party so believing was directed to "inform the court and the court will then determine whether recording will be suspended."

In its second prior order, which was issued upon the granting of the state's first "request for restrictions on audio/video televising of certain witnesses," the court disallowed, inter alia, "any broadcasting of the testimony of the medical examiner, the autopsy and any testimony regarding the decedent's body, *including photos thereof*." (Emphasis added.) That motion, which was filed under Practice Book § 1-11C (e), (g) and (i), was supported, inter alia, by allegations that "the family of Luke Vitalis [the homicide victim] would like to preserve the dignity of their son's life to the extent possible, and for that reason, the state requests that [the] court disallow any broadcasting of the testimony of the medi-

cal examiner, the autopsy, and any testimony regarding the decedent's body, including photos thereof."

In its third prior order, which was issued upon the granting of the state's second "request for restrictions on audio/video televising of certain witnesses," the court disallowed "any photographing or video-recording" of the state's witness, Detective Arthur Walkley. That motion, which was filed under Practice Book § 1-11B (g),[1] was supported, inter alia, by allegations that Detective Walkley, a police officer, was then "assigned to task force(s) which require[d] him to engage in undercover activity."

In its subsequent motion to clarify, the petitioner alleged, inter alia, that the court, after issuing the above-described orders, had "directed the clerk of the court to deny [the petitioner] copies of full exhibits entered in public view while the jury was present and not subject to any sealing order." (Footnote omitted.) It further alleged that the court's "prohibition on disclosure to the media and/or the public" was "not stated in the January 4, 2017, ruling or related orders." On the basis of those allegations, the petitioner sought clarification of: "1. Whether the denial of access to full exhibits entered in public view while the jury was present and not subject to any sealing order applies to the public and other media or just [the petitioner]" and "2. Whether the denial of access to full exhibits entered in public view while the jury was present and not subject to any sealing order applies to all exhibits entered during the trial or a subset of exhibits."

The trial court, upon reading the motion to clarify after the petitioner's principal, Edward Peruta, who was attending the hearing without his attorney, Rachel Baird, handed it up in open court, responded directly and immediately to its central allegation that the court had made an off-the-record ruling prohibiting the petitioner from making or receiving copies of unsealed trial exhibits. The court flatly denied that it had ever made such a ruling. It then rejected the petitioner's claim that it had ever denied anyone access to full exhibits that had been entered in public view and were not subject to a sealing order, stating that it had not issued *any* order concerning electronic coverage in this case since January 4, 2017, when its first three orders were issued. The court finally explained for the record, as follows, its "understanding of the situation" under the three orders which the petitioner sought, by its motion, to clarify: "Any exhibit that is a full exhibit is available to any member of the public to view. Any member of the public can come here and look at any exhibit. *There are some exhibits that are subject to an order that they not be videoed and otherwise disseminated, and that includes, for example, I believe, possibly autopsy photographs, some crime scene photographs, photographs of victims, if there were such.* The undercover agents

could not be videotaped. That doesn't mean any member of the public, including people who have a criminal history, could not have come into this courtroom and looked at the undercover agents when they testified. That was permissible.

"*So I have advised the parties of the request by the media, including [the petitioner], to see the exhibits. There's no prohibition on that. And, in fact, they can have copies of the exhibits, and they can disseminate the full exhibits with the exception of those subject to the order.* The problem in effectuating that is that there are some exhibits, like some CDs, that might have twenty or thirty photographs in them, some of which are not subject to the sealing order but some of which are, and the parties have, to my understanding—I've conveyed this several days ago to the parties that there is this request. I have no problem with it. I acquiesce in it. The parties have been busy and have not had time to go through all of these exhibits and sort out those that are subject to the sealing order, those that are not, but.

"So this motion for clarification is founded on a faulty premise. I did not issue the order set forth here." (Emphasis added.)

The upshot of the foregoing clarification was that, although all trial exhibits were parts of the public record which any member of the media or the public could view at any time, and copies of *most* such exhibits could be made for and disseminated by any member of the media or the public, a limited set of such exhibits—particularly, autopsy photographs, crime scene photographs and any other photographs that depicted the victim's dead body, as to which the court had granted the state's first "request for restrictions on audio/video televising of certain witnesses"—could not be "videoed and otherwise disseminated." *For that reason, although the latter exhibits could be viewed by everyone, they could not be copied by or for—or thus be made available for possible dissemination by—anyone.*[2]

The petitioner claims in its petition for review, and my colleagues agree, that the trial court erred in issuing its January 25, 2017 order clarifying that certain trial exhibits could be viewed but not be copied because the court issued that order, and the prior orders it thereby sought to clarify, without complying with the requirements of Practice Book § 42-49A. They find fault, in particular, with the court's failure to post notice of and hold evidentiary hearings on the subject motions, as well as its failure to articulate the overriding interest being protected by its challenged orders or to specify the findings underlying such orders.

The state opposes the petition for review, contending for two reasons that this court lacks subject matter jurisdiction over the petition under General Statutes

§ 51-164x (c) and Practice Book § 77-1. First, it argues that the challenged orders were not orders to "[seal] or [limit] the disclosure" of the subject trial exhibits, to which this court's power of review under General Statutes § 51-164x (c) and Practice Book § 77-1 is strictly limited, but instead were orders preserving the right of the media and the public to have access to such exhibits, albeit only by viewing them rather than by obtaining copies of them for their later examination and use, including, possibly, disseminating them to others. The petitioner disagrees, contending, as do my colleagues, that any order that trial exhibits not be copied for or made available for copying by the media or the public limits the disclosure of such exhibits, within the meaning of General Statutes § 51-164x (c) and Practice Book § 77-1, and thus is reviewable by this court on a timely petition for review filed under those provisions. I agree with the petitioner that this first aspect of the state's jurisdictional challenge to its petition for review must be rejected.

Second, the state claims that the order here complained of, like the limited no broadcasting order concerning the same trial exhibits that it sought to clarify, is not reviewable under General Statutes § 51-164x (c) and Practice Book § 77-1, because it was issued pursuant to Practice Book § 1-11C, which expressly provides, in subsection (j) thereof, that any order entered thereunder is "final." The petitioner disagrees with this claim as well, as do my colleagues. Although my colleagues recognize that any order entered under § 1-11C is final and unreviewable despite the broad language of § 77-1, they contend that the order here at issue neither was nor could have been issued under § 1-11C, but could only have been issued under the authority of, and in compliance with the procedures set forth in, Practice Book § 42-49A. I agree with the state on this second aspect of its jurisdictional challenge to the petitioner's petition for review, and, accordingly, I dissent.

I

WHETHER CHALLENGED ORDER PROHIBITING COPYING
OF CERTAIN TRIAL EXHIBITS LIMITED
DISCLOSURE OF SUCH EXHIBITS

I cannot agree with the state that the challenged order, to the extent that it prohibited the copying of certain trial exhibits depicting the decedent's body that had been made subject to the court's prior no broadcasting order, did not "[limit] the disclosure" of such exhibits, within the meaning of General Statutes § 51-164x (c) and Practice Book § 77-1. There are two reasons for this conclusion. First, although an order prohibiting the copying but permitting the viewing of an exhibit obviously does not bar all access to that exhibit, and in fact preserves such access in the manner specifically permitted, an order need not bar all access to or disclo-

sure of an item in order to effect a limitation upon its disclosure. By restricting the manner in which the subject trial exhibits could be accessed to viewing them physically, either in open court during trial or in the clerk's office when trial was not in session, the court unquestionably restricted the public's and the media's opportunity to gain access to such exhibits to persons who could come to the courthouse in person during business hours.

Second, although the term "limitation of disclosure" is not defined in Practice Book § 77-1, the term "disclosure" is so used in other Practice Book rules governing Connecticut criminal procedure as to suggest that the disclosure of materials, as used in those rules, means not only making materials available for viewing, but also providing copies of them or making them available for copying whenever it is practicable to do so. Most directly on point in this regard are our Practice Book rules governing criminal discovery, particularly: § 40-11, entitled "Disclosure by the Prosecuting Authority"; § 40-26, entitled "Disclosure by the Defendant; Information and Materials Discoverable by the Prosecuting Authority as of Right"; and § 40-7, entitled "Procedures for Disclosure." Section 40-11 (a) provides that, "[u]pon written request by a defendant . . . the prosecuting authority . . . shall promptly . . . disclose in writing the existence of, . . . *and allow the defendant in accordance with Section 40-7, to inspect, copy, photograph* and have reasonable tests made on" several specifically listed items. (Emphasis added.) Similarly, § 40-26 provides that, "[u]pon written request by the prosecuting authority . . . the defendant . . . shall promptly . . . disclose in writing to the prosecuting authority the existence of and *make available for examination and copying in accordance with the procedures of Section 40-7*" several specifically listed items. (Emphasis added.) Finally, § 40-7 (b) provides, in relevant part, that "any party may make disclosure by notifying the opposing party that all pertinent material and information *may be inspected and, if practicable, copied* at specific times and locations and the parties may schedule agreed dates and times to photograph and have reasonable tests made upon any disclosed material." (Emphasis added.) Each of these provisions expressly contemplates that the "disclosure" of information or material involves making such material available, not just for viewing, but for copying and/or photographing as well whenever it is practicable to do so.

In light of these provisions, it must be concluded that a party's right to the "disclosure" of information or materials under the Practice Book presumptively includes the right to make copies or photographs of such materials, if it is practicable to do so. I therefore conclude that the trial court's challenged orders in this case, permitting the viewing but not the copying of

certain trial exhibits depicting the victim's dead body, clearly constitutes an "order that . . . limits the disclosure" of such exhibits, within the meaning of General Statutes § 51-164x (c) and Practice Book § 77-1. Such an order is presumptively reviewable by this court under those provisions on a timely petition for review.

II

## WHETHER COURT WAS AUTHORIZED TO ISSUE CHALLENGED ORDER UNDER PRACTICE BOOK § 1-11C

In support of its second jurisdictional challenge to the petitioner's petition for review, that the challenged no copying order is final and unreviewable because it was issued under the authority of Practice Book § 1-11C, the state correctly notes that that order was issued in response to the petitioner's motion to clarify, which in turn was filed after the court had issued its three prior orders concerning electronic coverage of the defendant's murder trial, all under § 1-11C. The second of those prior orders, "disallow[ing] [the] broadcasting of the testimony of the medical examiner, the autopsy, and any testimony regarding the decedent's body, including photos thereof," was issued by the granting of the state's first request for restrictions on audio/video televising of certain witnesses, which the state based expressly upon § 1-11C (e), (g) and (i). The question thus presented by the state's second jurisdictional challenge is whether the trial court had the authority under § 1-11C to order that the trial exhibits here at issue not be copied for the media or the public, either as part of or in conjunction with its prior order under that rule that such exhibits, all of which were either autopsy or crime scene photographs depicting the victim's dead body, not be "videoed" or "disseminated." If the court had such authority, then not only was it authorized by law to consider the state's request to limit the disclosure of such exhibits without invoking or being bound to follow the specific rules and procedures set forth in Practice Book § 42-49A, but any order it issued in the exercise of such authority would be final and unreviewable under § 1-11C (j). I conclude that the trial court had such authority under § 1-11C, and must be understood to have exercised that authority both when it first issued its no broadcasting order as to such exhibits by granting the state's first "request for restrictions on audio/video televising of certain witnesses," and when it later clarified that order and its two other prior orders in this case. Accordingly, I conclude that those orders were all final under § 1-11C (j), and thus that this court lacks subject matter jurisdiction to review them under General Statutes § 51-164x (c) and Practice Book § 77-1.

Practice Book § 1-11C, as amended most recently in 2011, establishes rules governing media coverage of criminal proceedings in Connecticut, including trials in

the Superior Court. Adopted initially on June 29, 2007, to take effect on January 1, 2008, pursuant to the recommendations of the Judicial Branch's Public Access Task Force, in 2006, to establish a pilot program allowing electronic coverage of criminal proceedings in a single judicial district to be chosen by the Chief Court Administrator; see 2008 Connecticut Practice Book, commentary to § 1-11C; it became applicable throughout the state by a subsequent amendment adopted on June 20, 2011, which became effective on January 1, 2012. See 2012 Connecticut Practice Book, commentary to § 1-11C.

Now, substantially similar to when it was first adopted, Practice Book § 1-11C provides, in subsection (a) thereof, that, "[e]xcept as authorized by Section 1-11A regarding media coverage of arraignments, the broadcasting, televising, recording or photographing by media of criminal proceedings and trials in the superior court shall be allowed except as hereinafter precluded or limited and subject to the limitations set forth in Section 1-10B . . ." The rule further provides, in subsection (d) thereof, that "[u]nless good cause is shown, any media or pool representative seeking to broadcast, televise, record or photograph a criminal proceeding or trial shall, at least three days prior to the commencement of the proceeding or trial, submit a written notice of media coverage to the administrative judge of the judicial district where the proceeding is to be heard or the case is to be tried. . . . The administrative judge shall inform the judicial authority who will hear the proceeding or who will preside over the trial of the notice, and the judicial authority shall allow such coverage except as otherwise provided."

Subsection (e) of Practice Book § 1-11C goes on to provide that "[a]ny party, attorney, witness or other interested person may object in advance of electronic coverage of a criminal proceeding or trial if there exists a substantial reason to believe that such coverage will undermine the legal rights of a party or will significantly compromise the safety of a witness or other person or impact significant privacy concerns." Importantly, the subsection does not condition the right of a party, attorney, witness or other interested person to object to possible electronic coverage of the criminal proceeding or trial in question upon the media's submission of a written notice of media coverage under subsection (d), quite probably because of the media's right under that subsection either to file a late written notice of coverage or to file no such notice at all upon a showing of good cause, even after the start of the trial or other proceeding. In the event, however, that the media request camera coverage, and to the extent practicable, notice that an objection to electronic coverage has been filed, and the date, time and location of the hearing on such objection, in which any person whose rights are at issue, including the media, can participate, shall be posted on

the Judicial Branch website. Practice Book § 1-11C (e). The burden of proof on any objection to electronic coverage shall be on the person who filed the objection.

Practice Book § 1-11C further provides, in subsection (f) thereof, that "[t]he judicial authority, in deciding whether to limit or preclude electronic coverage of a criminal proceeding or trial, shall consider all rights at issue and shall limit or preclude such coverage only if there exists a compelling reason to do so, there are no reasonable alternatives to such limitation or preclusion, and such limitation or preclusion is no broader than necessary to protect the compelling interest at issue." Subsection (g) of the rule then goes on to provide, in language paralleling subsection (e), that among the matters the court can consider in deciding whether to limit or preclude electronic coverage of a criminal proceeding or trial are if such coverage "will undermine the legal rights of a party or will significantly compromise the safety or privacy concerns of a party, witness or other interested person . . . ." Subsection (g) finally requires that notice of the hearing on whether to limit or preclude coverage for the foregoing reasons must, if practicable, be given to all persons whose interests may be directly affected by the court's decision.

Although the first several subsections of Practice Book § 1-11C expressly set forth, as aforesaid, the manner in which objections to electronic media coverage that are filed before the start of a criminal proceeding or trial are to be made, heard and decided, the rule also addresses itself to objections to electronic coverage which are made in the course of such criminal proceeding or trial. On that subject, subsection (h) of the rule provides as follows: "Objection raised during the course of a criminal proceeding or trial to the *photographing*, *videotaping* or audio recording *of* specific aspects of the proceeding or trial, or *specific* individuals or *exhibits* will be heard and decided by the judicial authority, based on the same standards as set out in subsection (f) of this section used to determine whether to limit or preclude coverage based on objections raised before the start of [the] criminal proceeding or trial." (Emphasis added.) This subsection expressly authorizes the trial court to limit or preclude coverage of a criminal proceeding or trial by issuing orders not only prohibiting or restricting the photographing or videotaping of specific phases of the criminal proceeding or trial in which particular trial exhibits are being offered into evidence or published to the finder of fact, but also prohibiting or restricting the photographing or video-taping of the exhibits themselves, either inside or outside the courtroom. Stated differently, the subsection empowers the trial court, in aid of its power to order that particular trial exhibits not be made subject to electronic media coverage, to preclude all photographing or videotaping of such exhibits at any time or by any means, including photocopying, if, as required

by subsection (f), there "exists a compelling reason to do so, there are no reasonable alternatives to such . . . preclusion, and such . . . preclusion is no broader than necessary to protect the compelling interest at issue." Not surprisingly, the drafters of the final report of the Judicial Branch Public Access Task Force,[3] in recognition of the compelling privacy interests of relatives of murder victims in not having autopsy photographs of their loved ones publicly disseminated, inserted the explanatory parenthetical reference, "(e.g., autopsy photographs)," after the word "exhibits" in the text of their thirty-second recommendation, from which the text of subsection (h) was developed. Id., p. 5-12.

In light of its above-described provisions, Practice Book § 1-11C plainly authorizes the trial court, in any case where the trial exhibits include autopsy photographs or other material whose public dissemination would compromise significant privacy concerns of any party or other interested person, to order that such exhibits not be photographed or videotaped if there "exists a compelling reason to do so, there are no reasonable alternatives to such . . . preclusion, and such . . . preclusion is no broader than necessary to protect the compelling interest at issue." Practice Book § 1-11C (f). Although any such order would obviously "limit the disclosure" of any such trial exhibits, its issuance under § 1-11C would make it enforceable as a final order, under subsection (j) of that rule, and therefore unreviewable by this court on a petition for review under General Statutes § 51-164x (c) and Practice Book § 77-1.

Against this background, the trial court's clarification order of January 25, 2017, must be read and understood to have been issued under Practice Book § 1-11C. Because that order, like any other order issued under § 1-11C, must be enforced as a final order, this court lacks subject matter jurisdiction to review it on the petitioner's pending petition for review under General Statutes § 51-164x (c) and Practice Book § 77-1. The result is no different because the state, in its first "request for restrictions on audio/video televising of certain witnesses," did not cite subsection (h) of the rule as a partial basis for its request for relief. As the majority rightly notes, we look to the substance of a judicial order when assessing its legality.

Apart from the foregoing analysis of the text of Practice Book § 1-11C, there is one particularly compelling reason why that rule must be construed to authorize trial courts to issue no copying orders as to trial exhibits as to which they have issued no broadcasting orders. That reason, simply stated, is that without an accompanying no copying order, a no broadcasting order as to a trial exhibit such as an autopsy photograph would be constitutionally unenforceable as a prior restraint, in violation of the first and fourteenth amendments to the United States Constitution, against any person who has

lawfully obtained a copy of the exhibit.[4] Once information or materials have entered the public domain, a court cannot punish their publication without a justification in the form of a state interest of the highest order. *Smith* v. *Daily Mail Publishing Co.*, 443 U.S. 97, 103, 99 S. Ct. 2667, 61 L. Ed. 2d 399 (1979). Such an interest can only be found to exist in exceptional circumstances, such as where the information or materials to be published reveals crucial military information, contains obscenity or may directly incite acts of violence. *Near* v. *Minnesota*, 283 U.S. 697, 716, 51 S. Ct. 625, 75 L. Ed. 1357 (1931). Under that exacting standard, the prior restraint principle has been held, inter alia, to prohibit the enforcement of a court order not to publish a photograph of a juvenile charged with murder, which was lawfully taken by a reporter from one of the plaintiff's newspapers, when the juvenile was being transported from the courthouse to a detention facility. *Oklahoma Publishing Co.* v. *District Court*, 430 U.S. 308, 310–12, 97 S. Ct. 1045, 51 L. Ed. 2d 355 (1977). The juvenile, when photographed, was in public view of the photographer and the photographer, when he took the photograph, had a right to be where he was and doing what he was doing. Id., 309. The prior restraint principle would surely apply no less to any court order forbidding the broadcasting of a trial exhibit, such as an autopsy or crime scene photograph, if the copy of the exhibit that was shown in the broadcast was placed in the public domain by the court itself, by providing it to the media or the general public.

Two conclusions follow from this constitutional dilemma. The first, as previously noted, is that a no copying order must, as a practical matter, be issued as to any trial exhibit that is made the subject of a no broadcasting order lest the proverbial horse leave the barn before it is too late to close the door. If, stated differently, a no broadcasting order as to particular material, such as a trial exhibit, cannot constitutionally be enforced against any person seeking to broadcast such material who has lawfully obtained a copy of it, a no copying order as to such material must be issued and enforced *before* copies of it are made publicly available. As the United States Supreme Court observed in *Cox Broadcasting Corp.* v. *Cohn*, 420 U.S. 469, 496, 95 S. Ct. 1029, 43 L. Ed. 2d 328 (1975), "[w]e are reluctant to embark on a course that would make public records generally available to the media but forbid their publication if offensive to the sensibilities of the supposed reasonable man. Such a rule would make it very difficult for the media to inform citizens about the public business and yet stay within the law. The rule would invite timidity and self-censorship and very likely lead to the suppression of many items that would otherwise be published and that should be made available to the public. At the very least, the First and Fourteenth Amendments will not allow exposing the press to liabil-

ity for truthfully publishing information released to the public in official court records. *If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information. Their political institutions must weigh the interests in privacy with the interests of the public to know and of the press to publish. Once true information is disclosed in public court documents open to public inspection, the press cannot be sanctioned for publishing it.*" (Emphasis added; footnote omitted.) Id., 496.

The second is that any such no copying order must not only apply to all persons who may wish to broadcast or publish the subject material themselves, but to all persons from or through whom any such would-be broadcaster or publisher could obtain a copy of the material if it became publicly available. In short, then, the timely issuance and effective enforcement of a no copying order as to a trial exhibit that is subject to a no broadcasting order is an objecting party's only potentially effective means for ensuring that the no broadcasting order will be enforced.

I conclude that the trial court's clarification order of January 25, 2017, was properly entered under the authority of Practice Book § 1-11C (h), that that order was a final order under § 1-11C (j), and thus that the order is unreviewable by this court under General Statutes § 51-164x (c) and Practice Book § 77-1. I therefore respectfully dissent, because I agree with the state that the petitioner's petition for review should be dismissed for lack of subject matter jurisdiction.

[1] This citation to authority was obviously mistaken, in that Practice Book § 1-11B concerns electronic coverage of civil, not criminal, proceedings.

[2] Referring to those two classes of exhibits, for purposes of the court's clarification order, as Category One and Category Two, the petitioner filed a second motion to clarify the day after its first motion to clarify was decided, in which it sought a listing of which specific exhibits were in those categories. Because, however, it petitioned for review of the court's initial clarification order on the following day from when it filed its second motion for clarification, the latter motion has not yet been heard and decided.

[3] Final Report of the Judicial Branch Public Access Task Force (September 15, 2006), available at http://jud.ct.gov/external/news/PublicAccess/PATF_finalreport_091506.pdf (last visited June 16, 2017).

[4] In stating that my position "turns on its head the policy underpinning the prior restraint doctrine because it will result in less speech, not more," the majority misconstrues my concern regarding a potential unconstitutional prior restraint in the absence of a no copying order. I reference the concept of prior restraint to emphasize that there can be no effective limitation on the media's right to broadcast or photograph a trial exhibit, without a preliminary restriction on the copying of that exhibit. In other words, prior to broadcasting an exhibit, a media outlet first must obtain a copy of that exhibit, for how else would it have possession of said material for broadcast? If that exhibit is permitted to be copied, by anyone, its broadcast, publication or distribution of that copy cannot constitutionally be restricted. The only way to constitutionally restrict or limit the distribution of the exhibit would be to prohibit the copying of that exhibit. The court cannot legally prohibit the broadcasting of an exhibit that is already in the public domain.