[No. D021046. Fourth Dist., Div. One. July 21, 1994.]

KGTV CHANNEL 10 et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
NIKI M., Real Party in Interest.

**COUNSEL**

Gray, Cary, Ware & Freidenrich, Guylyn R. Cummins and Terri P. Durham for Petitioner.

Lloyd M. Harmon, Jr., County Counsel, and R. Mark Beesley, Deputy County Counsel, for Respondent.

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and Richard J. Sachs, Deputy District Attorneys, Loren I. Mandel, Alternate Public Defender, Jacqueline C. Crowle and Mary Ellen Attridge, Alternate Deputy Public Defenders, for Real Party in Interest.

Francis J. Bardsley, Public Defender, and Greg S. Maizlish, Deputy Public Defender, as Amici Curiae on behalf of Real Party in Interest.

**OPINION**

**NARES, J.**—In this case, we are called upon to decide whether the court may prohibit the media from publishing the name or likeness of a minor charged with murder at a juvenile court detention hearing when the minor's name and image were broadcast by the media at her arrest a few days before the hearing.

Murder is one of the serious offenses which opens the door to a public hearing. The media has a statutory right to attend the hearing and a constitutional right to say what transpires. Where, as here, reporters learn the minor's name at the detention hearing and see for themselves she was the same person arrested and pictured earlier, they have a right to report the information free from any restraint by the juvenile court.

FACTUAL AND PROCDEURAL BACKGROUND

Niki M. is the 17-year-old arrested and charged with murder for a shooting in Balboa Park in which a graduate student was killed and his girlfriend was wounded. On May 12, the media published Niki's full name and footage of her being escorted into a building in connection with a story about her arrest. According to the petition, the media lawfully obtained the minor's name from various sources including school officials and confidential police sources.

On May 16, media representatives were present for Niki's detention hearing in juvenile court.[1] At the start of the hearing, minor's counsel alluded to a witness identification problem and asked the court to exclude reporters from the hearing or, alternatively, direct them not to use the juvenile's name or likeness including her previous identification and picture. The court found it appropriate to allow the press to stay. The court did, however, order reporters not to use any cameras or recording devices or make any drawings of the minor although it conceded there might be a question about the enforceability of such an order. The court also ordered the media not to disclose the name of the minor in connection with the detention hearing, adding: "As long as she is in juvenile court, I expect confidentiality in all aspects of the process." The court then proceeded with the detention hearing.

At another session later that day, where the media appeared through counsel, the court explained it was not precluding—and could not preclude—the stations from disclosing the name of the minor arrested or showing the previous film clip because they obtained the information from presumably lawful sources. The court, however, repeated it did not want the name or pictures tied to anything that happened in juvenile court and thereafter issued a minute order stating: "The news media is precluded from identifying by full name or by likeness this minor in any description of this or any subsequent court proceeding in this case unless and until the provisions of W&I [§] 676 are met. [¶] All prior orders not in conflict remain in full force and effect." The minute order contained the minor's full name.

That evening, Channel 10 used Niki's full name and ran the footage from broadcasts disseminated on May 12, noting "a court order precluded us from stating whether the individual shown in the earlier footage and identified by name was the same person charged with murder in the juvenile court

---

[1]The alternate public defender has confirmed the matter was called on calendar, as are all cases in juvenile court, utilizing the minor's full name. Counsel and the court referred to the minor's last name throughout the hearing.

proceedings on May 16, 1994." The 11 p.m. introduction to "Stephen Clark's Perspective" and Mr. Clark's editorial further stated:

"The 17 year old girl arraigned on murder charges in Juvenile Court today ·says she is not guilty. Last week, police arrested 17 year [old] Niki [M.].[2] They accused her of being the one who pulled the trigger in that drive by shooting May 1st in Balboa Park. 24-year-old USD grad student John Lens [*sic*] was killed. Because of the Judge's order we are not allowed to say if [Niki M.] is the 17 year old girl who appeared in court today. By law, Juvenile Court proceedings are secret. The Judge's decision is a short sided [*sic*] one according to Stephen Clark. . . .

"[Stephen Clark:] . . . Well, I think it's time for all of us to stop cradling these juvenile criminals. We are not talking about a kid who threw a rock through a window or swiped a pack of gum from 7-11. We are talking about murder. Don't try to tell me any teenagers, specially a 17 year old doesn't know that murder is wrong. . . ."

On May 17, KGTV Channel 10, KFMB Channel 8, and KNSD Channels 7 and 39 filed a petition for writ of mandate requesting that we direct the lower court to vacate its order restricting coverage of the proceedings involving Niki M. On May 18, media's counsel was served with an order directing KGTV Television Studios, doing business as Channel 10, to show cause why it should not be held in contempt. We stayed the contempt hearing and calendared oral argument.

### DISCUSSION

The media protests the juvenile court order amounts to an unconstitutional prior restraint on speech. We agree. The order enjoins publication: it operates as a form of censorship on what the press may or may not report. As more fully set out below, the First and Fourteenth Amendments will not allow a court to make information available to the media at a public hearing and then forbid its publication.

### I

To start, we examine the statutory scheme regulating access to information about minors in the juvenile justice system. By way of background, juvenile court proceedings have traditionally been cloaked in a mantle of confidentiality thought necessary for the protection and rehabilitation of

---

[2]Although the broadcast contained the full name of the minor, we omit the last name in this decision in accordance with California Style Manual (3d ed. 1986) section 246.

juvenile offenders. (Comment, *Delinquency Hearings and the First Amendment: Reassessing Juvenile Court Confidentiality Upon the Demise of "Condition Access"* (1979) 13 U.C. Davis L.Rev., 123, 126-131.) In 1909, the statute gave minors and their parents the right to a private court hearing and, in 1929, allowed the court to close the hearing even if the minor and his family did not ask. (*Id.* at p. 127, fn. 14.) By 1960, closed hearings were the rule: proceedings were private in all juvenile cases in 45 of the state's 52 counties. (*Ibid.*)

Although the Legislature revamped the statutory framework in 1961 with the passage of Welfare and Institutions Code section[3] 676, the new statute generally continued the "closed door" policy with two exceptions. That is, section 676 denied admittance to the public in all cases except where the minor and his family requested the proceedings be open. It also allowed the judge to "admit those persons he or she deems to have a direct and legitimate interest in the particular case or the work of the court." (§ 676, subd. (a), added by Stats. 1961, ch. 1616, § 2.)

In 1980, the Legislature altered its approach in recognition of the fact that juvenile participation in serious and violent crime was on the rise. (See *Tribune Newspapers West, Inc.* v. *Superior Court* (1985) 172 Cal.App.3d 443, 448 [218 Cal.Rptr. 505].) The result was a change in part of the statute so that, as the juvenile's conduct became increasingly serious on the penal scale, the less the protection afforded under section 676 for confidentiality. Thus, the 1980 amendment kept in place the requirement for closed hearings absent a request by the minor or decision by the judge to admit individuals with a "direct and legitimate interest." (§ 676, subd. (a), amended by Stats. 1980, ch. 322, § 1, p. 662.) But closure yielded when the petition alleged the minor had committed murder, among other serious, violent offenses listed in section 676, subdivision (a). For murder and the other offenses (except certain sex-related crimes where the victim was under 16 years of age), the statute provided for the first time that "members of the public *shall be admitted* [to hearings], on the same basis as they may be admitted to trials in a court of criminal jurisdiction." (§ 676, subds. (a) & (b), italics added.)

Section 676 has been modified in some ways over the last 14 years but not significantly: it retains the same provisions for closed hearings in most cases but requires public admission to hearings where the petition alleges murder

---

[3]All *statutory references are to the* Welfare and Institutions Code unless otherwise specified.

and other serious offenses.[4] The list of serious offenses, however, has continued to grow.[5] Currently, the statute also provides: "Nothing in this section shall be applied to limit the disclosure of information as otherwise provided for by law." (§ 676, subd. (f).)

In our case, the court admitted the media to the detention hearing because it believed the press should be there. As the judge put it: "I'm allowing the media to be present for hearings because I think this is a case that has community attention and therefore the community is entitled to know what is happening within the court process as to this particular situation." Because the offense here was murder, however, members of the public including the press were also entitled by statute to attend.

The press was thus present with the knowledge and approval of the juvenile court and under color of a statutory right. The question then becomes whether the court could restrict reporters from identifying Niki "by full name or by likeness . . . in any description of this or any subsequent court proceeding in this case" because, as the court explained, juvenile court hearings are confidential and there is an informal agreement the media will not reveal information about the minor without first clearing it with the judge. Case law indicates the answer is no.

## II

The United States Supreme Court has consistently held the media has a constitutional right to publish information lawfully obtained inside and outside the courtroom. In *Nebraska Press Assn.* v. *Stuart* (1976) 427 U.S. 539 [49 L.Ed.2d 683, 96 S.Ct. 2791], the court invalidated an order prohibiting the press from publishing evidence tending to inculpate the defendant which was presented at a preliminary hearing open to the public. As the court reasoned, the judge might be able to close pretrial proceedings to the public in certain circumstances, but may not suppress the publication of information from a public hearing because "once a public hearing ha[s] been

---

[4]The courts have given a broad reading to the public's right to attend the hearings. In *Cheyenne K.* v. *Superior Court* (1989) 208 Cal.App.3d 331 [256 Cal.Rptr. 68], the court determined a minor charged with murder had no right to exclude the public from a competency proceeding. In *Tribune Newspapers West, Inc.* v. *Superior Court, supra,* 172 Cal.App.3d at pages 447-448, the court held the statute provided a right of public access in section 707 hearings to determine fitness to be tried as a juvenile.

[5]In 1990, the Legislature declared the "incidence of violent crime among juveniles has reached epidemic proportions . . . ." (Stats. 1990, ch. 246, § 1.) Adding "[i]t is unconscionable that law-abiding members of a community, victimized by violent criminals, are unable to obtain information about court proceedings paid for by their tax dollars," the Legislature found a need to temper the policy of confidentiality with respect to juvenile records. (*Ibid.*)

held, what transpire[s] there [cannot] be subject to prior restraint." (*Nebraska Press Assn.* v. *Stuart, supra,* 427 U.S. at p. 568 [49 L.Ed.2d at p. 703])

The constitutionality of a Georgia statute prohibiting publication of the name or identity of a rape victim was at issue in *Cox Broadcasting Corp.* v. *Cohn* (1975) 420 U.S. 469 [43 L.Ed.2d 328, 95 S.Ct. 1029], where the press discovered a victim's name examining indictments that were public records, published it and was sued for damages. Holding the statute unconstitutional, the court determined the media had a right to report events that occur at judicial proceedings and matters of public record, noting: "We are reluctant to embark on a course that would make public records generally available to the media but forbid their publication . . . . At the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records. If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information. Their political institutions must weigh the interests in privacy with the interests of the public to know and of the press to publish. Once true information is disclosed in public court documents open to public inspection, the press cannot be sanctioned for publishing it." (*Cox Broadcasting Corp.* v. *Cohn, supra,* 420 U.S. at p. 496 [43 L.Ed.2d at p. 350], fn. omitted.)

In *Oklahoma Publishing Co.* v. *District Court* (1977) 430 U.S. 308 [51 L.Ed.2d 355, 97 S.Ct. 1045], the Supreme Court overturned an order enjoining the press from publishing the name or picture of an 11-year-old boy allegedly involved in a shooting. Although the Oklahoma statutes provided juvenile hearings were to be held in private unless specifically opened by the court and precluded public inspection of juvenile records except by court order, reporters were present in the courtroom during the detention hearing, learned the boy's name and photographed the boy outside the courthouse. After the name and footage appeared in newspapers and broadcasts, the trial court enjoined further publication.

Relying on the *Nebraska Press* and *Cox Broadcasting* cases, the Supreme Court held the First and Fourteenth Amendments will not allow a state court to prohibit the publication of widely disseminated information at court proceedings which are in fact open to the public. (*Oklahoma Publishing Co.* v. *District Court, supra,* 430 U.S. at p. 310 [51 L.Ed.2d at pp. 357-358].) In the court's words: "Whether or not the trial judge expressly [ordered the hearing to be public], members of the press were in fact present at the hearing with the full knowledge of the presiding judge, the prosecutor, and the defense counsel. No objection was made to the presence of the press in

the courtroom or to the photographing of the juvenile as he left the courthouse. There is no evidence that [the media] acquired the information unlawfully or even without the State's implicit approval. The name and picture of the juvenile here were 'publicly revealed in connection with the prosecution of the crime,' [citation] much as the name of the rape victim in *Cox Broadcasting* was placed in the public domain. Under these circumstances, the District Court's order abridges the freedom of the press in violation of the First and Fourteenth Amendments." (*Oklahoma Publishing Co.* v. *District Court, supra*, 430 U.S. at pp. 311-312 [51 L.Ed.2d at pp. 358-359], fns. omitted.)

In *Smith* v. *Daily Mail Publishing Co.* (1979) 443 U.S. 97 [61 L.Ed.2d 399, 99 S.Ct. 2667], the Supreme Court concluded that a West Virginia statute making it a crime for a newspaper to publish the name of a minor charged as a juvenile offender without first obtaining written permission from the court violated the First and Fourteenth Amendments. In *Smith*, the press learned a student had been shot by monitoring police band radio frequencies. This led reporters to the junior high school where they found out the name of the suspect from witnesses, police and a deputy prosecutor on the scene. The state thereafter indicted the newspapers for publishing the juvenile suspect's name. Finding the statute unconstitutional, the court cautioned: "[I]f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order. . . . A free press cannot be made to rely solely upon the sufferance of government to supply it with information. [Citations.] If the information is lawfully obtained, as it was here, the state may not punish its publication except when necessary to further an interest more substantial than is present here." (*Smith* v. *Daily Mail Publishing Co., supra*, 443 U.S. at pp. 103-104 [61 L.Ed.2d at p. 405].) Significantly, the court determined the state's interest in the rehabilitation of juveniles was not sufficiently substantial to override the media's constitutional right to publish the name. (*Id.* at p. 104 [61 L.Ed.2d at pp. 405-406].)

The California cases reach similar conclusions. In *San Bernardino County Dept. of Public Social Services* v. *Superior Court* (1991) 232 Cal.App.3d 188 [283 Cal.Rptr. 332], Division Two of this district concluded the court has the discretion under section 346 to admit the media to juvenile dependency proceedings. That discretion was abused, however, where the court permitted the press to attend the hearings but conditioned attendance upon compliance with unconstitutional restrictions prohibiting publication of the names,

characters, cartoons or photographs of the minors, and limiting the media's right to investigate and interview witnesses. (283 Cal.Rptr. at p. 206.)

Under *Smith* and *San Bernardino County Dept. of Public Social Services* then, the media has a right to investigate, gather information about the minor outside the courtroom and disseminate it without interference by the court. The juvenile court in our case apparently recognized this principle.

What the juvenile court failed to appreciate was the media also has a right to attend the hearing (§ 676, subd. (a)) and report activities that occur inside the courtroom. The court here conducted the hearing using the minor's last name and released a minute order to media's counsel without redacting the name.

Under *Nebraska Press*, *Cox Broadcasting* and *Oklahoma Publishing*, the court may not enjoin the press from reporting true information disclosed at a public hearing or in records without running afoul of the First and Fourteenth Amendments. In exactly the same way here, if reporters attend Niki's detention hearing, learn her name at the hearing and see she is the same juvenile arrested and pictured a few days earlier, the court cannot order their silence.

### III

The arguments urged by counsel for the minor and the court are unavailing. The first argument is that maintaining anonymity furthers the rehabilitative goal of the juvenile justice system by protecting the minor from societal consequences that may haunt him for the rest of his life. This argument, however, was made and rejected in *Smith* where the Supreme Court found the state's interest in protecting and rehabilitating juveniles insufficient to overcome the media's First Amendment rights. (*Smith* v. *Daily Mail Publishing Co.*, *supra*, 443 U.S. at p. 104 [61 L.Ed.2d at pp. 405-406].)

The second argument is there was no showing the information was "lawfully obtained." Taking the position the source of the information may not have been "lawful" and they intended to explore this issue at the contempt hearing, counsel for the minor and the court assert: (1) the identity of the informants was not clear; (2) the Education Code imposes restrictions on the release of a student's name by school officials; and (3) the police may

not give the media information about taking a minor into custody.[6] Notwithstanding any alleged impropriety in the original source of the information,[7] however, where the court welcomes the media into the courtroom, holds a public hearing where last names are used and issues an order containing the minor's full name, the source of the information is the court itself." [W]here the government itself provide[s] or [makes] possible press access to the information," the information is "lawfully obtained." (*Smith* v. *Daily Mail Publishing Co., supra*, 443 U.S. at pp. 103-104 [61 L.Ed.2d at p. 405].)

The third argument of the minor and the court is that the confidentiality historically afforded to juvenile proceedings remains intact until the minor is either determined to be unfit for trial as a juvenile under section 707 or else is adjudicated a ward of the court. The trouble with this argument is it relies almost exclusively on cases predating the 1980 amendment such as *Brian W.* v. *Superior Court* (1978) 20 Cal.3d 618 [143 Cal.Rptr. 717, 574 P.2d 788], and legislative background materials relating to the former law. ■ The 1980 amendment changed the law to require for the first time that the public be admitted where a petition charges the juvenile with murder or one of the other enumerated serious offenses. The change reflected an increased concern for public understanding of the juvenile justice system and a recognition that, with *Smith*, the Supreme Court cast doubt on the validity of prohibitions against the publication of names in juvenile court. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1374 (1979-80 Reg. Sess.) as amended Jan. 28, 1980.)

We have been pointed to no express provision in the current statutes or the legislative history of the amendments to section 676 from 1980 to date conditioning media attendance at a public hearing on judicial control over what the press may say. We also find confidentiality irreconcilable with the legislative mandate for an open hearing and, as a practical matter, impossible to enforce when the public at large may freely come and go from the courtroom.

· ■ Finally, counsel for the minor and the court direct our attention to section 676, subdivision (c), which provides "[t]he name of a minor found to

---

[6]In a supplemental brief, county counsel asserts KGTV employs a cameraman who is also a reserve police officer with access to a police band radio scanner which picks up scrambled frequencies and descrambles them, and he may have used information from the scanner to enable his employer to get Niki's name and picture. As might be expected, the media filed a supplemental response flatly denying the allegations.

[7]Also relevant to the confidentiality issue are the "shield laws" which free reporters from any compulsion to divulge their sources by immunizing them from sanction of contempt for their refusal to disclose. (Cal. Const., art. I, § 2; Evid. Code, § 1070.) As a practical matter then, unless an informant comes forward and confesses, we rarely get past the bald allegation that the information was "lawfully obtained."

have *committed* one of the offenses listed in subdivision (a) shall not be confidential, unless the court, for good cause, so orders." (Italics added.) They proceed to argue, if the statute allows the court to declare the name confidential after determining the juvenile committed the offense, it must also be read to require the media to keep the name confidential until there is an adjudication in the case and the court decides whether there is good cause to order that the name not be divulged.

We disagree. First, following the usual rules of statutory interpretation, we are reluctant to read statutes by negative implication to destroy constitutional guarantees.

More important, we cannot accept counsel's construction. Specifically, we note, in enacting section 676, subdivision (c), the Legislature further declared: "Nothing in this act shall be construed to prohibit or restrict a court from identifying a case by the defendant's first name and the initial of his or her last name." (Stats. 1984, ch. 398, § 2, p. 1747.) Thus, despite the fact that hearings in cases alleging murder or other serious offenses are now public, the Legislature intended that the court would still be able to ensure some degree of confidentiality by limiting the use of last names. With this in mind, we interpret section 676, subdivision (c) as simply giving the court discretion, even after it determines a minor committed one of the serious offenses, to continue to keep the name confidential assuming it has previously taken the steps to preserve confidentiality along the way. The court may accomplish this by various ways such as identifying the case by first name and last initial, ordering participants to refer to the minor by first name, designating family members as "mother," "father," and the like.[8]

■ In sum, we conclude the court's order constitutes a prior restraint violative of the First and Fourteenth Amendments.[9] In issuing the order, the juvenile court failed to give any effect to the 1980 amendment requiring open public hearings where the petition alleges murder.

We do not mean to suggest by our opinion that the juvenile court's hands are tied in dealing with the press in a murder case where something other than a blanket rule enjoining the truthful publication of the minor's name and likeness is concerned. (See *Smith* v. *Daily Mail Publishing Co.*, *supra*, 443 U.S. at p. 106 [61 L.Ed.2d at pp. 406-407].) If, for instance, the minor establishes " 'a reasonable likelihood of substantial prejudice to the right to

---

[8] The media does not dispute the court's authority to restrain participants in the case from using the minor's full name.

[9] Because we decide the petition on this ground, we need not reach the issue of whether the order was too broad and ambiguous to survive First Amendment scrutiny or if there was jurisdiction over the media.

receive a fair and impartial trial,' " the court may have good cause to deny the public and press admittance altogether. (See *Cheyenne K.* v. *Superior Court, supra,* 208 Cal.App.3d at p. 336; *Tribune Newspapers West, Inc.* v. *Superior Court, supra,* 172 Cal.App.3d at p. 451, italics omitted.) Also, as noted above, the court may in appropriate cases limit the use of surnames in the courtroom or exercise its discretion to restrict electronic access to the courtroom. (See 1984, ch. 398, § 2, p. 1747; Cal. Rules of Court, rule 980.) The court may not, however, preclude the media from attending an open public hearing and reporting what transpires.

Let a peremptory writ issue directing the superior court to vacate the minute order filed on May 16, 1994, and order to show cause re contempt filed on May 17, 1994, and enter a new order consistent with this opinion. The stay issued by this court on May 24, 1994, is vacated.

Benke, Acting P. J., and Froehlich, J., concurred.