[No. D036248. Fourth Dist., Div. One. Dec. 21, 2000.]

SOUTH COAST NEWSPAPERS, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
STEVEN DeBOER et al., Real Parties in Interest.

**COUNSEL**

Gray Cary Ware & Freidenrich, Guylyn R. Cummins and Nancy L. Stagg for Petitioners.

No appearance for Respondent.

Steven J. Carroll, Public Defender, and Jo Pastore, Deputy Public Defender, for Real Party in Interest Michael Rose.

No appearance for Real Parties in Interest Steven DeBoer, Kevin Williams, Nicholas Fileccia, Adam Ketsdever, Jason Beever, Bradly Davidofsky and Morgan Manduley.

**OPINION**

**McDONALD, J.**—Petitioners[1] are news media that disseminate news locally, regionally and nationally. On August 25, 2000, respondent superior court entered an order (the order) prohibiting Media or anyone from publishing any nontilized[2] images of the defendants in a pending criminal proceeding, regardless of the source from which Media obtained the images. Media's petition for a writ of mandate seeks to reverse the order. Media argue the order is a prior restraint on free speech invalid under the First Amendment to the United States Constitution and article I, section 2 of the California Constitution. Real Party in interest Michael Rose argues a court

[1]The petitioners (collectively, Media) are South Coast Newspapers, Inc., publisher of the North County Times; The Copley Press, Inc., publisher of the San Diego Union-Tribune; KNSD 7/39, a television news station owned and operated by the National Broadcasting Company; and KGTV Channel 10, a television news station owned and operated by the McGraw-Hill Broadcasting Co.

[2]*Tilizing* the face will obscure the facial features of the individual depicted in the photograph or video.

may prohibit publication of a criminal defendant's likeness without offending the federal or state Constitution if that prohibition is necessary to protect that defendant's right to a fair and impartial trial.

## I

## BACKGROUND

Several juveniles, including Rose, were charged as adults with numerous crimes arising out of an attack on migrant workers in San Diego County. The attack and resulting criminal charges have been the focus of substantial public interest and extensive coverage by the print and broadcast media. The names, ages and other identifying information of the juveniles have previously been published.

On July 19, 2000, in response to a request to permit coverage of the court proceedings, the court ordered that the media would be permitted in the courtroom and would be permitted to take photographs and videotapes, subject to the requirement that there be no cameras in the hallways and that the defendants' faces be tilized in any photograph or videotape obtained in the courtroom. Media do not challenge the propriety of the July 19, 2000 order. (Cal. Rules of Court, rule 980.)

Media obtained photographs of several of the defendants from lawful sources, including school yearbooks and photographs taken outside the courthouse, and published these photographs without tilizing the defendants' faces. On August 25, 2000, in response to these publications, Rose moved to expand the July 19, 2000 order. Rose argued that because the identity of the defendants was an issue in the case, it was necessary to prohibit Media from publishing photographs or videotapes of the defendants' faces, regardless of the source of the photograph or videotape, to preserve the integrity of the evidence to be used at trial. The court agreed, and on August 25, 2000, enjoined Media from publishing any nontilized images of the defendants regardless of the source of those images.[3] The court denied Media's request for modification or reconsideration of the order and Media filed this petition for a writ of mandate. We issued an order to show cause and held oral argument.

## II

## DISCUSSION

■ An order enjoining publication of a photograph of a suspect in a pending court proceeding is classic prior restraint of speech. (Cf. *Smith v.*

---

[3]The order provided, "Previous [July 19] orders remain in full force [and] effect. In addition, any images received [through] other sources to be tilized."

*Daily Mail Publishing Co.* (1979) 443 U.S. 97, 103 [99 S.Ct. 2667, 2670-2671, 61 L.Ed.2d 399], citing *Oklahoma Publishing Co. v. District Court* (1977) 430 U.S. 308 [97 S.Ct. 1045, 51 L.Ed.2d 355].) Prior restraints are "one of the most extraordinary remedies known to our jurisprudence" (*Nebraska Press Assn. v. Stuart* (1976) 427 U.S. 539, 562 [96 S.Ct. 2791, 2804, 49 L.Ed.2d 683]) and carry a heavy burden against constitutional validity. (*Id.* at p. 558 [96 S.Ct. at pp. 2802-2803]; see also *Gilbert v. National Enquirer, Inc.* (1996) 43 Cal.App.4th 1135, 1144 [51 Cal.Rptr.2d 91] [prior restraints are disfavored and presumptively invalid].) ▆ It is undisputed that the material published by Media here, and the future publication of material the order purports to enjoin, was lawfully obtained and truthful information. The publication of lawfully obtained, truthful information about a matter of public significance cannot be restrained unless it is necessary to protect a state interest of the highest order. (*The Florida Star v. B. J. F.* (1989) 491 U.S. 524, 533 [109 S.Ct. 2603, 2609, 105 L.Ed.2d 443].) The courts have consistently struck down similar efforts to enjoin the publication of lawfully obtained information about pending court proceedings. For example, in *Nebraska Press Assn. v. Stuart, supra,* 427 U.S. 539, the trial court enjoined publication of lawfully obtained, publicly available information relating to a defendant's confessions or other "strongly implicative" information (*id.* at p. 541 [96 S.Ct. at p. 2794]), based on the dangers publication would pose to the defendant's Sixth Amendment rights to a fair and impartial jury untainted by pretrial publicity. The United States Supreme Court, although articulating a test that might permit prior restraints in rare cases,[4] held that the "barriers to prior restraint remain high and the presumption against its use continues intact" (*Nebraska Press, supra,* 427 U.S. at p. 570 [96 S.Ct. at p. 2808]). The defendants' interest in a fair trial did not justify the prior restraint in that case. We are unaware of any case, in either federal or state court, that has upheld a prior restraint under the *Nebraska Press* criteria. (See *C.B.S. v. U.S. Dist. Ct. for C.D. of California* (9th Cir. 1983) 729 F.2d 1174, 1178-1179.)

The California courts have likewise repeatedly struck down orders enjoining publication of lawfully obtained information concerning pending court proceedings. For example, in *San Bernardino County Dept. of Public Social*

---

[4]The *Nebraska Press* court declined to establish a bright-line rule holding such an order is always invalid. However, commentators have suggested that if the egregious facts presented to the *Nebraska Press* court did not satisfy the criteria articulated by that court for a valid prior restraint, then as a practical matter the *Nebraska Press* decision amounts to a complete bar against prior restraints on reporting criminal proceedings. (Portman, *The Defense of Fair Trial From Sheppard to Nebraska Press Association: Benign Neglect to Affirmative Action and Beyond* (1976) 29 Stan. L.Rev. 393, 409, fn. 72; Prettyman, *Nebraska Press Association v. Stuart: Have We Seen the Last of Prior Restraints on the Reporting of Judicial Proceedings?* (1976) 20 St. Louis U. L.J. 654.)

Services v. Superior Court (1991) 232 Cal.App.3d 188 [283 Cal.Rptr. 332], the trial court order allowed the media access to a dependency proceeding but placed restrictions on reporting those proceedings, including a ban on publishing photographs of the minor. The appellate court held that although the media did not have a constitutionally protected right to attend the dependency proceedings in the case, the conditions placed on the media's admittance to the proceedings were unconstitutional. The court stated at 232 Cal.App.3d, page 206: "The juvenile court clearly was without the power to restrict the press's right to investigate and publish information which it has lawfully obtained. (*Oklahoma Publishing Co.* v. *District Court*[, *supra*,] 430 U.S. 308 . . . : the judiciary cannot prohibit the publication of a juvenile's name and picture when that information has been lawfully obtained by the media; see also, *Smith* v. *Daily Mail Publishing Co.*[, *supra*,] 443 U.S. 97 . . . .) Here the court, through its conditions, attempted to prohibit the publication of information without regard to how the press obtained the information. If the information was or is lawfully obtained, it is beyond the juvenile court's power to so restrain the press. Contrary to its statement that it did not have the power to make a 'gag' order directed to the Sun, the court by imposing such conditions for access in effect restricted the Sun's right to have access to sources of information and to publish information lawfully obtained by it."

Similarly, in *KGTV Channel 10 v. Superior Court* (1994) 26 Cal.App.4th 1673 [32 Cal.Rptr.2d 181], a juvenile court held a detention hearing for a 17-year-old minor who was charged with murder. The media had previously published the minor's full name and photographs of her in connection with a story about her arrest. The trial court's order allowed the media to attend the detention hearing but prohibited the media from publishing her likeness in connection with reports of the hearing. This court concluded the order prohibiting publication of materials obtained from lawful public sources was an unconstitutional prior restraint, reasoning that under *Smith v. Daily Mail Publishing Co., supra*, 443 U.S. 97, the state's interest in protecting and rehabilitating juveniles was insufficient to overcome the media's First Amendment rights. (*KGTV Channel 10, supra,* at p. 1682.)

Rose contends the order is valid because it is a narrowly drawn prophylactic measure necessary to protect his constitutional right to a fair trial.[5] He argues that because the identity of the perpetrators of the various crimes will be a primary issue at trial, an order prohibiting dissemination of photographs

[5]Rose does not claim that the state's interest in protecting and rehabilitating juveniles, or the criminal defendant's interest in having a jury untainted by pretrial publicity, constitutes a sufficient state interest to support the order here.

depicting the defendants' faces is essential to preserve the integrity of the witnesses' in-court testimony concerning the identity of the perpetrators. However, there apparently is no relevant authority upholding a prior restraint the rationale for which is the preservation of the integrity of a witness's in-court identification.[6] Accordingly, we must test the validity of the order under the generic guidelines articulated in *Nebraska Press Assn. v. Stuart, supra,* 427 U.S. 539.

■ Although *Nebraska Press* did not declare that a prior restraint on reporting criminal proceedings is always void, it established that to uphold a prior restraint on reporting a public criminal proceeding, the court must examine the nature and extent of pretrial news coverage, whether means less onerous than a prior restraint are available to mitigate the dangers to the countervailing interest posed by the pretrial news publicity, and the effectiveness of prior restraint in preventing the dangers created by the publicity. (*Nebraska Press Assn. v. Stuart, supra,* 427 U.S. at p. 562 [96 S.Ct. at p. 2804].) In *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178 [86 Cal.Rptr.2d 778, 980 P.2d 337], the court addressed the related problem of the validity of restrictions placed on the media's report of civil proceedings, and stated at pages 1217 to 1218 that before a prior restraint can be upheld: "a trial court must hold a hearing and expressly find

---

[6]The cases cited by Rose to support his argument are inapposite. For example, Rose cites *Cheyenne K. v. Superior Court* (1989) 208 Cal.App.3d 331 [256 Cal.Rptr. 68], in which the trial court denied a minor's motion to exclude the public from a hearing to determine whether the minor was competent to stand trial. The appellate court held that when a proceeding filed under Welfare and Institutions Code section 602 alleges the minor has committed certain serious offenses, the minor has no absolute right to exclude the public from hearings related to those proceedings, and that the public may attend those proceedings unless the minor establishes a reasonable likelihood that public access would substantially prejudice the minor's right to receive a fair and impartial trial. (*Cheyenne K., supra,* 208 Cal.App.3d at pp. 335-337.) The other case relied on by Rose, *Tribune Newspapers West, Inc. v. Superior Court* (1985) 172 Cal.App.3d 443 [218 Cal.Rptr. 505], similarly held that the public may attend proceedings unless the minor establishes a reasonable likelihood that public access and the resulting adverse publicity would substantially prejudice the minor's right to receive a fair and impartial trial. (*Id.* at p. 451.) Although these cases permit a trial court to close certain proceedings to the public, they do not support imposing a blanket prior restraint on the truthful publication of lawfully obtained information concerning the minors charged with criminal activity. As this court cautioned in *KGTV Channel 10 v. Superior Court, supra,* 26 Cal.App.4th at pages 1684-1685, "We do not mean to suggest by our opinion that the juvenile court's hands are tied in dealing with the press in a murder case where something other than a blanket rule enjoining the truthful publication of the minor's name and likeness is concerned. [Citation.] If, for instance, the minor establishes ' "a reasonable likelihood of substantial prejudice to the right to receive a fair and impartial trial," ' the court may have good cause to deny the public and press admittance altogether. [Citing *Cheyenne K. v. Superior Court* and *Tribune Newspapers West, Inc. v. Superior Court.*] . . . The court may not, however, preclude the media from attending an open public hearing and reporting what transpires."

that (i) there exists an overriding interest supporting closure and/or sealing; (ii) there is a substantial probability that the interest will be prejudiced absent closure and/or sealing; (iii) the proposed closure and/or sealing is narrowly tailored to serve the overriding interest; and (iv) there is no less restrictive means of achieving the overriding interest. [Fns. omitted.]"

Our review of the order is de novo and we independently examine the record to determine the constitutionality of the order under these standards.[7] (*L. A. Teachers Union v. L. A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 557 [78 Cal.Rptr. 723, 455 P.2d 827]; *Hurvitz v. Hoefflin* (2000) 84 Cal.App.4th 1232, 1242 [101 Cal.Rptr.2d 558].)

■ Rose argues, and we agree, that his due process right to a fair trial is a substantial or overriding interest that competes with Media's free speech rights, and that the order was narrowly tailored.[8] However, we are unconvinced that the other two necessary prongs are satisfied here. First, although the due process concerns cited by the trial court are "in the abstract, an overriding interest, and . . . the First Amendment [would], in an appropriate case, permit [a prior restraint] to protect that interest[, t]he trial court . . . made no finding supporting the proposition that prejudice to that interest was *substantially probable* absent [the prior restraint]." (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court, supra,* 20 Cal.4th at p. 1222, original italics, fns. omitted.) We are unconvinced on this record that there is a substantial probability that, absent the prior restraint, the witnesses' in-court identifications of the defendants would be based on photographs seen in the newspapers rather than their observations of the perpetrators at the crime scene. (*Id.* at pp. 1222-1223.) There was no showing that any of the migrant worker victims, the only apparent percipient witnesses able to identify the perpetrators, expressed uncertainty over their ability to identify the perpetrators during previous live or photographic lineups. There is no evidence that these migrant worker victims regularly view the television or read the newspapers

[7]The trial court here held a hearing but did not make express findings that each of the four elements was present; under *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court, supra,* 20 Cal.4th 1178, the absence of these findings would require that the order be vacated. However, we will not remand for a redetermination (cf. *San Bernardino County Dept. of Public Social Services v. Superior Court, supra,* 232 Cal.App.3d at pp. 207-208) because our independent review of the record convinces us the applicable standard was not satisfied.

[8]Specifically, Rose argues that because the identity of the defendants is an issue in the case, published photographs showing the defendants' faces might be viewed by the prosecution witnesses, and the in-court identifications by those witnesses could be tainted as a result. The order was narrowly tailored to mitigate that danger. In analogous circumstances, the courts have acknowledged that procedures impacting a witness's ability to identify a perpetrator, when unnecessarily suggestive and conducive to irreparable mistaken identification, can deprive an accused of the due process right to a fair trial. (See generally *People v. Caruso* (1968) 68 Cal.2d 183, 187-190 [65 Cal.Rptr. 336, 436 P.2d 336].)

that seek to publish the photographs. The record is devoid of any evidence that publishing these photographs creates a substantial probability the migrant worker victims' identifications of the perpetrators were either tentative or in danger of being altered by the published photographs. (Cf. *Nebraska Press Assn. v. Stuart, supra,* 427 U.S. at p. 569 [96 S.Ct. at p. 2807] ["Reasonable minds can have few doubts about the gravity of the evil pretrial publicity can work, but the probability that it would do so here was not demonstrated with the degree of certainty our cases on prior restraint require."].)

Second, and of equal import, there are less restrictive means of achieving the competing interest. If any defendant believes a witness's prospective in-court identification has been tainted by suggestive pretrial events, including viewing photographs in the newspapers, he can, by in limine motion or by a timely trial objection, move to exclude the testimony and require the trial court to take evidence out of the presence of the jury to determine whether the proposed in-court identification is admissible as the witness's independent recollection or inadmissible as tainted by unduly suggestive pretrial events. (*People v. Enos* (1973) 34 Cal.App.3d 25, 38-39 [109 Cal.Rptr. 876]; *People v. Vanbuskirk* (1976) 61 Cal.App.3d 395, 401-404 [132 Cal.Rptr. 30].) These procedures provide adequate and less restrictive means to achieve the competing interest of avoiding tainted in-court identifications without infringing on the important interests protected by the First Amendment to the United States Constitution and the even broader rights contained in article I, section 2 of the California Constitution. (*Gilbert v. National Enquirer, Inc., supra,* 43 Cal.App.4th at p. 1144; see *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468 [101 Cal.Rptr.2d 470, 12 P.2d 720].)

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its August 25, 2000 order. This opinion is made final immediately as to this court. (Cal. Rules of Court, rule 24(d).) Each party is to bear its own costs.

Huffman, Acting P. J., and Nares, J., concurred.